UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BEVERLY R. DAILEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:14-cv-00294-SEB-TAB |
| ) | |
| CAROLYN W. COLVIN Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

Plaintiff Beverly R. Dailey appeals Commissioner Carolyn Colvin's denial of her Social Security application for a period of disability and disability insurance benefits. Dailey argues that the ALJ erred in failing to summon a medical advisor to determine whether she met or equaled listing 1.04; that substantial evidence does not support the ALJ's finding that Dailey was disabled; and that the ALJ erred in her credibility determination. The Court held oral argument on December 3, 2014. For the reasons set forth below, the undersigned recommends that Plaintiff's brief in support of appeal [Filing No. 12] be denied and the Commissioner's decision be affirmed.

**I. Facts and Findings**

Dailey filed an application for a period of disability and disability insurance benefits on March 24, 2011, alleging a disability onset date beginning February 12, 2010. [Filing No. 9-2, at ECF p. 16.] On May 1, 2010, the ALJ held a video hearing, after which Dailey submitted additional evidence that the ALJ considered.

1

On September 21, 2012, the ALJ issued a ruling finding Dailey not disabled. At step one, the ALJ found that Dailey did not engage in substantial gainful activity. At step two, the ALJ found that Dailey suffered from one severe impairment: degenerative disk disease status post history of microdiscectomy at L5-S1 with no evidence of any pinched nerves. The ALJ concluded that Dailey's anxiety caused no more than a minimal limitation in Dailey's ability to perform basic mental activities and was not severe. [Filing No. 9-2, at ECF p. 19.] At step three, the ALJ found that Dailey did not meet or equal listing 1.04, and at step four, the ALJ determined Dailey to be capable of performing:

> sedentary work . . . the claimant is limited to lifting and carrying up to 10 pounds frequently and occasionally, and can stand and/or walk for 2 hours, and sit for 6 hours, in an 8-hour workday. Additionally, the claimant can occasionally balance, stoop, kneel, and climb ramps or stairs, but can never crouch, crawl, or climb ladders, ropes, or scaffolds. Furthermore, the claimant should avoid concentrated exposure to extreme cold and hazards such as unprotected heights and balancing on slippery, narrow, uneven, or moving surfaces.

[Filing No. 9-2, at ECF p. 20.] Relying on a vocational expert, the ALJ concluded that Dailey was capable of performing past relevant work as an account classification clerk and secretary. At step five, the VE also found Dailey capable of performing jobs in the national economy as a hotel order clerk, callout operator, change account clerk, or mailroom tube operator. Consequently, the ALJ concluded that Dailey was not disabled. The Appeals Council denied a subsequent review of the ALJ's decision, and this appeal followed.

## II. Discussion

*A. Standard of Review*

The Court must uphold the ALJ's decision if substantial evidence supports her findings. Terry v. Astrue, 580 F.3d 471, 475 (7th Cir. 2009). "The substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003). The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). The ALJ, however, need not mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

    B. *Summoning a medical advisor*

Dailey argues that the ALJ erred in failing to summon a medical expert to determine whether Dailey met or equaled listing 1.04.[1] The ALJ found that the medical evidence did not establish nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as the listing requires. Moreover, the ALJ noted that there was no evidence that Dailey's back disorder resulted in an inability to ambulate effectively. [Filing No. 9-2, at ECF p. 20.] Dailey, however, points to evidence of her limited motion, motor loss with sensory of reflex loss, positive straight leg raises, and antalgic gait to support her argument that she met or equaled the listing. Dailey asserts that the ALJ should have obtained a medical expert opinion to determine whether she met

---

[1] Listing 1.04 requires a compromise of a nerve root or the spinal cord with (a) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting an supine); or (b) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or (c) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. Pt. 403 Subpt. P, App. 1.

3

or equaled listing 1.04, and the ALJ's failure to do so warrants remand. At oral argument, Dailey presented additional arguments that were not set forth in the briefing. Defendant did not have any meaningful opportunity to respond. Accordingly, these additional arguments are waived.

An ALJ is to consider the opinion of one or more medical consultants when determining whether an impairment medically equals a listing. 20 C.F.R. §§ 404.1526(c), 416.926(c). Using the disability determination and transmittal form conclusively establishes that the physician, who completed the form, considered the question of medical equivalence at the initial and reconsideration levels of administrative review. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). However, the ALJ maintains the ultimate responsibility of determining medical equivalence. 20 C.F.R. §§ 404.1526(e); 416.926(e). Dailey complains that the state agency reviewers failed to complete a disability determination and transmittal form in reviewing her impairments. However, they did. The record reflects that on June 7, 2011, and July 20, 2011, state agency reviewers Drs. Joshua Eskonen and Jonathan Sands completed disability determination and transmittal forms to which they attached their supporting documentation—the physical residual functional capacity assessment form (SSA-4734-BK form) and the case analysis form (SSA-416 form).[2] [Filing No. 9-3, at ECF p. 2-3; Filing No. 9-7, at ECF p. 107;

---

[2] The state agency reviewers completed disability determination and transmittal SSA-831-C3 forms. Social Security Ruling 96-6p indicates that a physician who completes an SSA-831-U5 (disability determination and transmittal form), SSA-832-U5, or SSA-833-U5 (cessation or continuance of disability or blindness form) form has considered the question of medical equivalence. The physicians' disability determination and transmittal forms were not SSA-831-U5 forms. However, having reviewed an SSA-831-U5 form from the Social Security website (which was not admitted into evidence), there can be no legitimate basis to dispute that the SSA-831-U5 and the SSA-831-C3 forms are the same. *See* Social Security Administration, Exhibit F SSA-831-U5 Disability and Determination Transmittal Form, https://secure.ssa.gov/apps10/poms.nsf/lnx/0443520070. Moreover, the Commissioner indicated at oral argument that Social Security Ruling 96-6p permits other documents on which medical

Filing No. 9-8, at ECF p. 24.] The ALJ relied on these opinions in making her decision, which was not in error.

Moreover, the ALJ adequately developed the record in determining that Dailey did not satisfy listing 1.04. The decision to summon a medical advisor is within the ALJ's discretion. If an ALJ determines that medical evidence concerning an impairment is insufficient, then the ALJ should consider summoning a medical advisor. *Skinner v. Astrue*, 478 F.3d. 836, 843-44 (7th Cir. 2007). But the ALJ is not required to order additional medical examinations, especially if the ALJ adequately developed the record. *Clifford v. Apfel,* 227 F.3d 863, 873 (7th Cir. 2000). Dailey contends that the ALJ failed to address evidence of nerve root compromise, limitation of motion, sensory or reflex loss, positive straight leg raises, and antalgic gait. However, this is incorrect.

Aside from relying on medical expert opinions, the ALJ specifically noted that there was evidence of sensory or reflex loss, positive straight leg raises, and an antalgic gait. [Filing No. 9-2, at ECF p. 22-24.] Despite the antalgic gait, the ALJ reported that Dailey could ambulate without the use of an assistive device [Filing No. 9-7, at ECF p. 88; Filing No. 9-8, at ECF p. 20; Filing No. 9-8, at ECF p. 49] and maintained normal balance and coordination. [Filing No. 9-7, at ECF p. 88.] The ALJ also reported that Dailey had limited range of motion, secondary to pain. [Filing No. 9-8, at ECF p. 52.] However, the ALJ noted that Dailey maintained full strength and deep tendon reflexes in her lower extremities. [Filing No. 9-2, at ECF p. 24; Filing No. 9-7, at ECF p. 79; Filing No. 9-8, at ECF p. 20, 29, 35, 37, 49, 52.]

---

consultants may record their findings to satisfy the issue of medical equivalence. Even if the forms are not the same, the ALJ still did not err in relying on the state agency reviewers' disability determination and transmittal forms as they are other documents that consider the question of medical equivalence.

The ALJ also indicated that Dailey maintained nearly full range of motion [Filing No. 9-7, at ECF p. 79] and motor function. [Filing No. 9-7, at ECF p. 60; Filing No. 9-2, at ECF p. 79; Filing No. 9-8, at ECF p. 37.] The ALJ noted that Dailey's straight leg raise was negative bilaterally on some examinations—for example, Dailey's January 2011 examination [Filing No. 9-7, at ECF p. 79] and May 16, 2011, examination [Filing No. 9-7, at ECF p. 87]. The ALJ also discussed examinations where Dailey exhibited a positive straight leg raise. [Filing No. 9-7, at ECF p. 30; Filing No. 9-8, at ECF p. 49; Filing No. 9-8, at ECF p. 52-53.] Thus, the ALJ adequately developed the record and she did not err in failing to summon a medical advisor.

C. *Substantial evidence to support the ALJ's finding*

Dailey next argues that the ALJ mischaracterized certain medical facts. Specifically, Dailey points to two pieces of evidence that the ALJ misconstrued, which Dailey argues requires remand. The first piece of evidence concerns Dailey's treating rheumatologist Dr. Kevin Sigua, who opined that Dailey "has more than adequate criteria for a diagnosis of lupus." [Filing No. 9-8, at ECF p. 66.] Dailey argues that the ALJ failed to discuss this piece of evidence and instead, improperly concluded that "there [was] no objective medical evidence or diagnostic testing of a [diagnosis of systemic lupus erythematosus] in the record. Therefore, this [was] a non-medically determinable impairment." [Filing No. 9-2, at ECF p. 19.]

However, the evidence from Dr. Sigua was first submitted to the Appeals Council after the ALJ's decision. The Appeals Council considered Dr. Sigua's medical reports and concluded that it did not provide a basis for changing the ALJ's decision. [Filing No. 9-2, at ECF p. 2.] Evidence not before the ALJ may not be used by the reviewing court to remand under sentence four of 42 U.S.C. § 405(g). *Morgan v. Astrue*, 623 F.Supp. 2d 971, 976 (S.D. Ind. 2009). However, the Court may remand under sentence six of 42 U.S.C. § 405(g) for the ALJ to

consider additional evidence, if that evidence is new and material. Dailey's evidence is not new and material. For evidence to be considered new, it must not be in existence before or available to the claimant at the time of the administrative proceedings. *Schmidt v. Barnhart,* 395 F.3d 737, 741-42 (7th Cir. 2005). Dr. Sigua's evidence predates the ALJ's decision by two months, and Dailey provides no explanation on how this evidence was unavailable at the time of the administrative proceeding.

Evidence is material when there is a reasonable probability that the ALJ would have reached a different conclusion if she had considered the evidence. *Schmidt,* 395 F.3d at 742. Dr. Sigua's examination reported that Dailey adequately met the criteria for a lupus diagnosis. However, not every diagnosis is disabling and the evidence does not support a finding that Dailey was disabled as a result of lupus. *Osborn v. Colvin*, No. 1:12-cv-1375-JMS-DML, 2013 WL 5274255, at *4 (S.D. Ind. Sept. 18, 2013). Dailey's lupus diagnosis and related symptoms were not discussed in any other medical reports. Thus, it is not reasonably probable that this additional information would have changed the ALJ's decision if she would have considered it. The Court need not address the good cause requirement as Dailey failed to establish that the evidence was new and material.

Dailey's second piece of evidence relates to the ALJ's characterization of her straight leg raise test results. Specifically, consulting examiner Dr. William S. Sobat found a positive straight leg raise on Dailey's left side while lying down and a negative straight leg raise on the right when he examined Dailey's back. Neurologically, however, Dr. Sobat concluded that Dailey's straight leg raise was negative both lying and sitting. [Filing No. 9-7, at ECF p. 88.] The ALJ mentioned Dr. Sobat's report and stated, "The doctor indicated that straight leg raise testing was negative in both the lying and sitting positions and her deep tendon reflexes were 3+

throughout." [Filing No. 9-2, at ECF p. 23.] Dailey asserts that the ALJ cherry-picked evidence from Dr. Sobat's report as she did not address Dr. Sobat's positive straight leg raise finding and did not acknowledge the internal inconsistency in Dr. Sobat's opinion. This error, however, should not warrant remand.

Although the ALJ failed to mention Dailey's positive straight leg raise test from Dr. Sobat's examination, she did not ignore such findings entirely. She acknowledged other examinations that yielded a positive straight leg result. [Filing No. 9-8, at ECF p. 49, 52-53.] The ALJ also noted examinations where Dailey had negative straight leg raises. [Filing No. 9-7, at ECF p. 60, 73.] While it appears that Dailey would prefer a more thorough analysis of her straight leg raise test results, the ALJ was not required to do so. The ALJ need only build a logical bridge from the evidence to her conclusion, and address evidence that contradicts her ultimate determination. *Pepper v. Colvin*, 712 F.3d 315, 362 (7th Cir. 2013); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ did just that. Thus, remand is not warranted on this issue.

   D.  *Credibility determination*

Dailey's final argument concerns the ALJ's credibility assessment. Dailey argues that the ALJ improperly relied on Dailey's daily living activities to discredit her and to make it appear as if she was capable of performing more work than she actually was. At oral argument, Dailey asserted additional arguments to support her credibility, emphasizing that Dailey made numerous attempts to resolve pain on her own, that medical reports were consistent with Dailey's accounts of pain, and that the a recent decision[3] from this Court supports her argument.

---

[3] Dailey cited to Judge Young's remand order in *Kennedy v. Colvin*, 1:13-cv-0703-RLY-DML, to support her argument. This opinion is not accessible via Westlaw or Lexis.

8

These additional arguments were not set forth in Dailey's briefs and the Commissioner did not have a meaningful opportunity to respond. Thus, they are waived.

Turning to Dailey's remaining argument, Dailey asserts that the ALJ unfairly characterized her daily living activities. The ALJ summarized:

> The claimant alleges that she suffers from medical conditions that cause her to experience severe pain and difficulty sitting, walking, standing, kneeling, lifting, squatting, bending, reaching, stair climbing, concentrating, and completing tasks. Despite these allegations, the claimant indicated that she addresses her personal care needs, takes care of her daughter, takes care of pets, prepares meals, performs household chores such as light cleaning, laundry, ironing, and watering plants, drives a car, goes grocery shopping, pays bills, counts change, manages a savings account, and uses a checkbook and money orders. Additionally, the claimant indicated that she goes swimming and sings on a regular basis. Here, the claimant has described daily activities that are inconsistent with the claimant's allegations or disabling symptoms and limitations, which weakens her credibility.

[Filing No. 9-2, at ECF p. 22.]

As set forth in her brief and at oral argument, Dailey finds the ALJ's characterization misleading. To be sure, the ALJ's discussion and credibility determination are problematic. For one, the ALJ inaccurately characterized Dailey's relationship with her daughter, asserting Dailey cares for her daughter when in reality, her daughter often cares for her. [Filing No. 9-2, at ECF p. 74; Filing No. 9-6, at ECF p. 55.] Moreover, Dailey indicates that she is limited in her ability to cook, noting that she could prepare sandwiches and frozen meals, but her daughter typically helped her. In her adult function report, Dailey reported that together with her husband and daughter, they cook, clean, and do laundry. [Filing No. 9-6, at ECF p. 56.] The ALJ reported that Dailey was capable of her own personal care and could iron. Yet, Dailey explained that at times she needed help with her personal care and could only iron a couple of pieces of clothing at a time. [Filing No. 9-6, at ECF p. 57.] Still, Dailey admitted she could lightly clean, water plants, care for her pets, drive, shop, swim, sing, pay bills, count change, manage a savings

9

account, and use a checkbook and money order. [Filing No. 9-6, at ECF p. 57-60.] The ALJ relied on these facts in discussing Dailey's daily living activities.

"Because the ALJ is in the best position to observe witnesses, [the Court] will not disturb [her] credibility determinations as long as they find some support in the record." *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007). The Court will only overturn a credibility determination that is patently wrong. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). Though the ALJ mischaracterized some of Dailey's activities, the credibility determination was not patently wrong. As the Commissioner set forth at oral argument, the ALJ's discussion of Dailey's living activities was one of several factors considered in determining Dailey's credibility assessment. Indeed, the ALJ did not equate Dailey's daily living activities with her ability to work full time, which would undoubtedly be a basis for remand. *See Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012) (reprimanding ALJs that equate daily living activities with a claimant's employment capacity).

Instead, Dailey's daily living activities was one factor that the ALJ considered in her credibility determination. The ALJ also discussed the objective medical evidence and found it failed to support Dailey's allegations. Although Dailey had a history of a degenerative disc disease, she had full motor function of in all muscle groups in her upper and lower extremities bilaterally. [Filing No. 9-7, at ECF p. 60; Filing No. 9-7, at ECF p. 79; Filing No. 9-8, at ECF p. 37.] She also could ambulate without the use of an assistive device, maintained her deep tendon reflexes, as well as normal strength in both her arms and legs. [Filing No. 9-7, at ECF p. 79; Filing No. 9-7, at ECF p. 88; Filing No. 9-8, at ECF p. 20; Filing No. 9-8, at ECF p. 29.] Similarly, the ALJ concluded that third-party statements were not fully credible. For one, the statements did not establish that Dailey was disabled. Likewise, the third-party statements were

from Dailey's mother, who could not be considered a disinterested party. [Filing No. 9-6, at ECF p. 64.] Though far from perfect, the ALJ provided specific reasons to support her credibility determination and the Court should not disturb her finding.

### III. Conclusion

For the foregoing reasons, the Court should affirm the Commissioner's decision and deny Dailey's brief in support of appeal [Filing No. 12]. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 11/17/2014

_____
Tim A. Baker
U.S. Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Ashley D. Marks
HANKEY LAW OFFICE
adm@hankeylaw.com

Brian J. Alesia
OFFICE OF REGIONAL CHIEF COUNSEL FOR SOCIAL SECURITY
brian.alesia@ssa.gov

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov